NO. 20-CI-004077                                    JEFFERSON CIRCUIT COURT
                                                            DIVISION ONE (1)
                                              JUDGE HON BARRY WILLETT

ROY STUCKER and COURTNEY BROWN-PORTER,                       PLAINTIFFS
on behalf of herself and as guardian and next friend of
her minor child, S.W.

v.

LOUISVILLE METRO GOVERNMENT,                                DEFENDANTS
WESLEY TROUTMAN, and UNKNOWN METRO POLICE OFFICERS

*** *** ***

## AMENDED COMPLAINT AND JURY DEMAND

Plaintiffs, Roy Stucker ("Roy") and Courtney Brown-Porter ("Courtney"), on behalf of

herself and as guardian and next friend of her minor child, ("S.W.")(collectively "Plaintiffs") state

the following in support of their claims against Defendants, Louisville Metro Government

("Metro"), Wesley Troutman ("Troutman"), and Unknown Metro Police Officers ("Officers").

### PARTIES and JURISDICTION

1.      Plaintiffs are residents of Louisville, Kentucky.

2.      Metro is a legal governmental entity.

3.      The facts giving rise to this lawsuit occurred in Jefferson County, Kentucky, and

Defendants are otherwise subject to the personal jurisdiction of this Court.

4.      The amounts Plaintiffs seek in this lawsuit exceed the minimal jurisdictional

amount of this Court, and jurisdiction and venue in this Court are otherwise proper.

### FACTS

5.      On or about July 15, 2019, Plaintiffs were painting a residence located at 142 W.

Amherst Ave., Louisville, Kentucky (the "Residence").

6.      Roy is a painter and independent contractor. Roy lives with girlfriend Courtney and her child, S.W.

7.      Defendants were executing a search warrant at the Residence on July 15, 2019 regarding potential drug activities of Joshua Kirk a/k/a/ Jay ("Kirk").

8.      Pursuant to the search warrant affidavit submitted by Troutman, the only purported basis for linking the Residence to Kirk was that Kirk allegedly went in or near the Residence on two occasions (June 7 and June 25, 2019) and then subsequently sold suspected methamphetamine and/or heroin to a confidential information a short time later.

9.      Troutman (and/or LMPD) surveilled Kirk on five occasions after June 25, including on occasions when Kirk was engaging in suspected drug activity, yet Kirk did not visit the Residence on any of the occasions.

10.     The Residence was searched on July 5, 2019, which resulted in Nathiel Boyington ("Boyington") being arrested on that date and placed in Metro's custody.

11.     Boyington remained in custody of Metro until after the raid on July 15, 2019.

12.     Any tenants of the Residence having any affiliation with Boyington or Kirk moved out of the Residence approximately 5-10 days prior to the S.W.A.T. raid at issue on July 15, 2019.

13.     Roy was hired by the new tenant to paint the Residence to get it ready for the new tenant.

14.     Plaintiffs had no affiliation with or knowledge of Kirk or Boyington or anyone living with either one at the time of the raid.

15.     The house had been empty and removed of furniture for many days before July 15, 2019, including furniture being outside on the curb.

16.     Roy had been painting the house for three days prior to July 15, with his clearly marked painting truck in front of the Residence.

17.     On July 15, 2019, Troutman and a S.W.A.T. team of at least ten (10) Metro police officers raided the Residence in military fashion.

18.     The Officers broke into the house without reasonable advance warning or probable cause, including shooting objects through the windows.

19.     The Officers drew assault rifles on Plaintiffs, including S.W., while yelling commands.

20.     Plaintiffs initially thought they were being robbed.

21.     Plaintiffs were extremely frightened that they would be maimed or killed.

22.     The Officers handcuffed Plaintiffs for approximately 20 minutes, including handcuffing S.W., who was a 10 year-old girl at the time.

23.     Plaintiffs did not pose any or enough danger to the Officers to warrant handcuffing them. Handcuffing Plaintiffs was unreasonable.

24.     S.W. did not pose any danger to the Officers.

25.     Handcuffing S.W. was unreasonable.

26.     Keeping Plaintiffs handcuffed was unreasonable.

27.     Keeping S.W. handcuffed was unreasonable.

28.     Plaintiffs have suffered past, present and future severe emotional distress as a result of the raid, including, but not limited to the descriptions above, and also one or more of the Plaintiffs: (a) having difficulty sleeping; (b) being afraid when they hear loud bangs or knocks on the door; (c) being afraid of the police; and (d) fearing being shot and/or death;

29.    Metro provided body camera footage of the raid but the footage was significantly redacted.

30.    Metro refused to provide the Search Warrant and Affidavit to Plaintiffs, despite repeated open records requests.

31.    Plaintiffs expressly reserve the right to amend this Complaint after discovery, including, but not limited to, once unredacted copies of the body camera footage is provided, particularly given that the incident was very traumatic for Plaintiffs.

32.    Defendants' conduct was willful, in bad faith, malicious, and/or with reckless disregard for Plaintiffs' rights.

## COUNT I – TROUTMAN REGARDING THE SEARCH WARRANT

33.    Plaintiffs reassert all prior paragraphs as if fully set forth herein.

34.    Troutman's purported information linking Kirk to the Residence was grossly stale and even the surveillance of Kirk on five occasions thereafter did not link Kirk to the Residence. Thus, he clearly did not have probable cause to search the residence.

35.    Troutman knew that Kirk was no longer visiting the Residence.

36.    Troutman should have known that: (1) the Residence was vacant of any resident; and (2) the Residence had already been searched ten days prior, which resulted in any contraband being placed into custody.

37.    Even the most basic due diligence would have revealed that there was no probable cause to issue and/or execute the search warrant.

38.    Troutman, in his official capacity and under color of law, made materially false statements and/or omissions to obtain the search warrant with either knowledge of its falsity or omission or with reckless disregard for the truth.

39.     Troutman is not entitled to qualified immunity.

40.     Such conduct violated Plaintiffs' Fourth Amendment rights to be protected from unreasonable searches and seizures and to be free from warrants without probable cause.

41.     Such conduct violates 42 U.S.C. § 1983.

## COUNT II – TROUTMAN AND OFFICERS FOR ILLEGAL SEARCH AND SEIZURE

42.     Plaintiffs reassert all prior paragraphs as if fully set forth herein.

43.     The law requires that all entries, searches and seizures with a warrant must be executed in a reasonable manner.

44.     It was completely unreasonable to execute a warrant under the circumstances set forth above.

45.     Under the circumstances set forth above, it was completely unreasonable to use a S.W.A.T. team of at least 10 Officers, shooting through the windows, forced entry, and assault rifles.

46.     It was unreasonable to handcuff Plaintiffs and keep them handcuffed.

47.     It was unreasonable to handcuff S.W. and keep her handcuffed.

48.     The Officers who handcuffed Plaintiffs and/or kept them handcuffed are named as Defendants, and their actual names will be substituted for Unknown Officers after further discovery, including unredacted videos being produced.

49.     Troutman and the Officers' conduct after entry was also unreasonable and excessive, as detailed above.

50.     Troutman and the Officers' conduct in executing the warrant violated Plaintiffs' Fourth Amendment rights to be protected from unreasonable searches and seizures.

51.     Such conduct violates 42 U.S.C. § 1983.

## COUNT III – *MONELL* CLAIM AGAINST METRO

52.    Plaintiffs reassert all prior paragraphs as if fully set forth herein.

53.    Metro's policy or custom regarding obtaining and/or executing search warrants served to deprive Plaintiffs of their Fourth Amendment rights to be protected from unreasonable searches and seizures and to be free from warrants without probable cause.

54.    Metro fails to adequately train its officers regarding obtaining search warrants in order to protect citizens' Fourth Amendment rights to be protected from unreasonable searches and seizures and to be free from warrants without probable cause.

55.    Metro fails to adequately train its officers regarding executing search warrants in order to protect citizens' Fourth Amendment rights to be protected from unreasonable searches and seizures and to be free from warrants without probable cause.

56.    Metro did not require its officers who regularly obtained search warrants to complete updated, thorough and continuing training regarding obtaining and executing search warrants.

57.    Troutman should have been required to receive training that included that the officer should not use stale information in order to obtain a search warrant and that "stale" is defined as being more than 2 days old.

58.    Metro's lack of proper training caused, in whole or in part, Plaintiffs' constitutional rights to be violated.

59.    Further, Metro's "actual" policy and custom regarding obtaining search warrants is that stale information is routinely used to obtain search warrants, consistent with numerous other executions, including the *Burr* matter.

60.     Metro's "actual" policy and custom regarding executing search warrants is to execute the search warrant in military SWAT team fashion, with little or no advance knocking or warning, without due regard for the risk involved, consistent with numerous other executions, including the *Burr* and *Taylor* matters.

61.     Metro's policy or custom results in the issuance of search warrants without probable cause and/or execution in an unreasonable manner in violation of Plaintiffs' Fourth Amendment rights.

62.     Metro is deliberately indifferent to the known or obvious consequences of its true policies and customs.

63.     Metro's conduct violates 42 U.S.C. § 1983.

### ADDITIONAL COUNTS – STATE LAW CLAIMS

64.     Plaintiffs reassert all prior paragraphs as if fully set forth herein.

65.     The following causes of action are asserted against Troutman and the Officers, in their individual and official capacities.

66.     Troutman and the Officers restrained, confined and held Plaintiffs against their will, depriving them of liberty without consent.

67.     Thus, they falsely imprisoned Plaintiffs.

68.     Troutman and the Officers' conduct was deliberate, unreasonable, and/or with gross disregard for Plaintiffs' rights.

69.     Troutman and the Officers' conduct exceeded all reasonable bounds of decency and was outrageous and intolerable in a civilized community.

70.     The conduct caused severe emotional distress to Plaintiffs.

71.     Thus, it amounts to the tort of outrage.

72.     Troutman and the Officers' are liable for official misconduct, pursuant to KRS §

522.020 and KRS § 446.070, because they intended to obtain or confer a benefit or to injure

Plaintiffs or to deprive Plaintiffs of a benefit, knowingly: (a) committing an act relating to his

office which constitutes an unauthorized exercise of his official functions; or (b) refrains from

performing a duty imposed upon him by law or clearly inherent in the nature of his office; or (c)

violates any statute or lawfully adopted rule or regulation relating to his office.

73.     Defendants have violated Section 10 of the Bill of Rights of the Kentucky

Constitution to be free from unreasonable search and seizure and to be free from warrants without

probable cause, and without description as nearly as may be.

## DAMAGES

74.     As the result of each and every cause of action, Plaintiffs suffered damages,

including emotional injuries, past, present, and future, in amounts to be determined by the jury,

nominal damages, property damage, lost income, punitive damages, and their attorney fees, court

costs, and interest.

**WHEREFORE**, Plaintiffs respectfully request this Court:

1. Grant trial by jury;

2. Enter Judgment against Defendants and in Plaintiffs' favor, including compensatory

damages, punitive damages, court costs, interest at the legal rates, and attorney's fees; and

3. Grant any and all other relief the Court or jury deems appropriate.

Respectfully submitted:


/s/ Joshua T. Rose
Joshua T. Rose
ABELL ROSE LLC
108 S. Madison Ave.
Louisville, KY 40243
(502) 450-5611
jrose@abellroselaw.com

*Counsel for Plaintiffs*

NO. _____

JEFFERSON CIRCUIT COURT
DIVISION _____
JUDGE _____

ROY STUCKER and COURTNEY BROWN-PORTER,                    PLAINTIFFS
on behalf of herself and as guardian and next friend of
her minor child, S.W.

v.

LOUISVILLE METRO GOVERNMENT,                              DEFENDANTS
UNKNOWN DETECTIVE, and UNKNOWN METRO POLICE OFFICERS

**\*\*\* \*\*\* \*\*\***

## COMPLAINT AND JURY DEMAND

Plaintiffs, Roy Stucker ("Roy") and Courtney Brown-Porter ("Courtney"), on behalf of herself and as guardian and next friend of her minor child, ("S.W.")(collectively "Plaintiffs") state the following in support of their claims against Defendants, Louisville Metro Government ("Metro"), Unknown Detective ("Detective"), and Unknown Metro Police Officers ("Officers").

### PARTIES and JURISDICTION

1.      Plaintiffs are residents of Louisville, Kentucky.

2.      Metro is a legal governmental entity.

3.      The facts giving rise to this lawsuit occurred in Jefferson County, Kentucky, and Defendants are otherwise subject to the personal jurisdiction of this Court.

4.      The amounts Plaintiffs seek in this lawsuit exceed the minimal jurisdictional amount of this Court, and jurisdiction and venue in this Court are otherwise proper.

### FACTS

5.      On or about July 15, 2019, Plaintiffs were painting a residence located at 142 W. Amherst Ave., Louisville, Kentucky (the "Residence").

6.      Roy is a painter and independent contractor. Roy lives with girlfriend Courtney and her child, S.W.

7.      Upon information and belief, Defendants were executing a search warrant at the Residence regarding potential drug activities of a Nathiel Boyington ("Boyington").

8.      However, the Residence was already searched on July 5, 2019, which resulted in Boyington being arrested on that date and placed in Metro's custody.

9.      Boyington remained in custody of Metro until after the raid on July 15, 2019.

10.     Any co-tenants of the Residence having any affiliation with Boyington moved out of the Residence approximately 5-10 days prior to the S.W.A.T. raid at issue on July 15, 2019.

11.     Roy was hired by the new tenant to paint the Residence to get it ready for the new tenant.

12.     Plaintiffs had no affiliation with or knowledge of Boyington or anyone living with him at the time of the raid.

13.     The house had been empty and removed of furniture for many days before July 15, 2019, including furniture being outside on the curb.

14.     Roy had been painting the house for three days prior to July 15, with his clearly marked painting truck in front of the Residence.

15.     On July 15, 2019, upon information and belief, Detective and a S.W.A.T. team of at least ten (10) Metro police officers raided the Residence in military fashion.

16.     The Officers broke into the house without reasonable advance warning or probable cause, including shooting objects through the windows.

17.     The Officers drew assault rifles on Plaintiffs, including S.W., while yelling commands.

18.     Plaintiffs initially thought they were being robbed.

19.     Plaintiffs were extremely frightened that they would be maimed or killed.

20.     The Officers handcuffed Plaintiffs for approximately 20 minutes, including handcuffing S.W., who was a 10 year old girl at the time.

21.     Plaintiffs did not pose any or enough danger to the Officers to warrant handcuffing them. Handcuffing Plaintiffs was unreasonable.

22.     S.W. did not pose any danger to the Officers.

23.     Handcuffing S.W. was unreasonable.

24.     Keeping Plaintiffs handcuffed was unreasonable.

25.     Keeping S.W. handcuffed was unreasonable.

26.     Plaintiffs have suffered past, present and future severe emotional distress as a result of the raid, including, but not limited to the descriptions above, and also one or more of the Plaintiffs: (a) having difficulty sleeping; (b) being afraid when they hear loud bangs or knocks on the door; (c) being afraid of the police; and (d) fearing being shot and/or death;

27.     Metro provided body camera footage of the raid but the footage was significantly redacted.

28.     Metro refused to provide the Search Warrant and Affidavit to Plaintiffs, despite repeated open records requests.

29.     Plaintiffs expressly reserve the right to amend this Complaint after discovery, including, but not limited to, once the Search Warrant Affidavit is produced and once unredacted copies of the body camera footage is provided, particularly given that the incident was very traumatic for Plaintiffs.

30.     Defendants' conduct was willful, in bad faith, malicious, and/or with reckless disregard for Plaintiffs' rights.

## COUNT I – DETECTIVE REGARDING THE SEARCH WARRANT

31.     Plaintiffs reassert all prior paragraphs as if fully set forth herein.

32.     The Detective should have known that: (1) the Residence was not occupied by Boyington; (2) the Residence was vacant of any resident; and (3) the Residence had already been searched ten days prior, which resulted in the target and any evidence he had being placed into custody.

33.     Even the most basic due diligence would have revealed that there was no probable cause to issue and/or execute the search warrant.

34.     Detective, in his official capacity and under color of law, made materially false statements and/or omissions to obtain the search warrant with either knowledge of its falsity or omission or with reckless disregard for the truth.

35.     Detective is not entitled to qualified immunity.

36.     Such conduct violated Plaintiffs' Fourth Amendment rights to be protected from unreasonable searches and seizures and to be free from warrants without probable cause.

37.     Such conduct violates 42 U.S.C. § 1983.

## COUNT II – DETECTIVE AND OFFICERS FOR ILLEGAL SEARCH AND SEIZURE

38.     Plaintiffs reassert all prior paragraphs as if fully set forth herein.

39.     The law requires that all entries, searches and seizures with a warrant must be executed in a reasonable manner.

40.     It was completely unreasonable to execute a warrant under the circumstances set forth above.

Filed        20-CI-004077    11/18/2020        David L. Nicholson, Jefferson Circuit Clerk

41.    Under the circumstances set forth above, it was completely unreasonable to: (a) use a S.W.A.T. team of at least 10 Officers, shooting through the windows, forced entry, and assault rifles.

42.    It was unreasonable to handcuff Plaintiffs and keep them handcuffed.

43.    It was unreasonable to handcuff S.W. and keep her handcuffed.

44.    The Officers who handcuffed Plaintiffs and/or kept them handcuffed are named as Defendants, and their actual names will be substituted for Unknown Officers after further discovery, including unredacted videos being produced.

45.    Detective and the Officers' conduct after entry was also unreasonable and excessive, as detailed above.

46.    Detective and the Officers' conduct in executing the warrant violated Plaintiffs' Fourth Amendment rights to be protected from unreasonable searches and seizures.

47.    Such conduct violates 42 U.S.C. § 1983.

### COUNT III – METRO'S CUSTOM

48.    Plaintiffs reassert all prior paragraphs as if fully set forth herein.

49.    Upon information and belief, Metro's policy or custom regarding obtaining and/or executing search warrants served to deprive Plaintiffs of their Fourth Amendment rights to be protected from unreasonable searches and seizures and to be free from warrants without probable cause.

50.    Upon information and belief, Metro fails to adequately train its officers regarding obtaining search warrants in order to protect citizens' Fourth Amendment rights to be protected from unreasonable searches and seizures and to be free from warrants without probable cause.

Filed        20-CI-004077    11/18/2020        David L. Nicholson, Jefferson Circuit Clerk

51.     Upon information and belief, Metro fails to adequately train its officers regarding executing search warrants in order to protect citizens' Fourth Amendment rights to be protected from unreasonable searches and seizures and to be free from warrants without probable cause.

52.     Metro's policy or custom results in the issuance of search warrants in lower income neighborhoods without probable cause and/or in an unreasonable manner in violation of the Fourth Amendment.

53.     Metro's policy or custom results in the issuance and/or execution of stale search warrants, even if probable cause existed when the warrant was obtained, which is unreasonable.

54.     There are numerous similar issuances and executions of search warrants in violation of law, including instances being litigated before this and the United States District Court for the Western District of Kentucky.

55.     Metro is deliberately indifferent to the known or obvious consequences of its policies and customs.

56.     Metro's conduct violates 42 U.S.C. § 1983.

**ADDITIONAL COUNTS – STATE LAW CLAIMS**

57.     Plaintiffs reassert all prior paragraphs as if fully set forth herein.

58.     The following causes of action are asserted against Detective and the Officers, in their individual and official capacities.

59.     Detective and the Officers restrained, confined and held Plaintiffs against their will, depriving them of liberty without consent.

60.     Thus, they falsely imprisoned Plaintiffs.

61.     Detective and the Officers' conduct was deliberate, unreasonable, and/or with gross disregard for Plaintiffs' rights.

62.      Detective and the Officers' conduct exceeded all reasonable bounds of decency and was outrageous and intolerable in a civilized community. ·

63.      The conduct caused severe emotional distress to Plaintiffs.

64.      Thus, it amounts to the tort of outrage.

65.      Detective and the Officers' are liable for official misconduct, pursuant to KRS § 522.020 and KRS § 446.070, because they intended to obtain or confer a benefit or to injure Plaintiffs or to deprive Plaintiffs of a benefit, knowingly: (a) committing an act relating to his office which constitutes an unauthorized exercise of his official functions; or (b) refrains from performing a duty imposed upon him by law or clearly inherent in the nature of his office; or (c) violates any statute or lawfully adopted rule or regulation relating to his office.

66.      Defendants have violated Section 10 of the Bill of Rights of the Kentucky Constitution to be free from unreasonable search and seizure and to be free from warrants without probable cause, and without description as nearly as may be.

## DAMAGES

67.      As the result of each and every cause of action, Plaintiffs suffered damages, including emotional injuries, past, present, and future, in amounts to be determined by the jury, nominal damages, property damage, lost income, punitive damages, and their attorney fees, court costs, and interest.

**WHEREFORE,** Plaintiffs respectfully request this Court:

1. Grant trial by jury;

2. Enter Judgment against Defendants and in Plaintiffs' favor, including compensatory damages, punitive damages, court costs, interest at the legal rates, and attorney's fees; and

3. Grant any and all other relief the Court or jury deems appropriate.

Respectfully submitted:


/s/ Joshua T. Rose
Joshua T. Rose
ABELL ROSE LLC
108 S. Madison Ave.
Louisville, KY 40243
(502) 450-5611
jrose@abellroselaw.com

*Counsel for Plaintiffs*



| AOC-E-105        Sum Code: CI | CIVIL SUMMONS | Case #: **20-CI-004077** |
|---|---|---|
| Rev. 9-14 | | Court:  **CIRCUIT** |
| Commonwealth of Kentucky | | County: **JEFFERSON Circuit** |
| Court of Justice      Courts.ky.gov | | |
| CR 4.02; Cr Official Form 1 | | |

*Plantiff,* **STUCKER, ROY, ET AL VS. LOUISVILLE METRO GOVERNMENT, ET AL,** *Defendant*

TO:  **UNKNOWN DETECTIVE LMPD**
　　 **633 W. JEFFERSON STREET**
　　 **LOUISVILLE, KY 402020000**

The Commonwealth of Kentucky to Defendant:

　　You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons.  **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*David L. Nicholson*

Jefferson Circuit Clerk
Date: **11/18/2020**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

　　To: _____

☐ Not Served because: _____

　Date: _____, 20_____ 　　 _____
　　　　　　　　　　　　　　　　　　　　　　Served By

　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　Title

---

Summons ID: @00000961542
CIRCUIT: 20-CI-004077 Certified Mail
STUCKER, ROY, ET AL VS. LOUISVILLE METRO GOVERNMENT, ET AL



Page 1 of 1

*e*Filed

| | | |
|---|---|---|
| AOC-E-105   Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice      Courts.ky.gov<br><br>CR 4.02; Cr Official Form 1 | <br><br>**CIVIL SUMMONS** | Case #: **20-CI-004077**<br>Court:   **CIRCUIT**<br>County: **JEFFERSON Circuit** |

*Plantiff,* **STUCKER, ROY, ET AL VS. LOUISVILLE METRO GOVERNMENT, ET AL**, *Defendant*

TO: **UNKNOWN METRO POLICE OFFICERS**

   **633 W. JEFFERSON STREET**

   **LOUISVILLE, KY 402020000**

The Commonwealth of Kentucky to Defendant:

   You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons.  **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Davis L. Nicholson

Jefferson Circuit Clerk

Date: **11/18/2020**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

   To: _____

☐ Not Served because: _____

Date: _____, 20_____      _____
                                                         Served By

                                                 _____
                                                         Title

---

Summons ID: @00000961543
CIRCUIT: 20-CI-004077 Certified Mail
STUCKER, ROY, ET AL VS. LOUISVILLE METRO GOVERNMENT, ET AL



Page 1 of 1

*e*Filed

| AOC-E-105     Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice    *Courts.ky.gov*<br><br>CR 4.02; Cr Official Form 1 | <br><br>**CIVIL SUMMONS** | Case #: **20-CI-004077**<br>Court:   **CIRCUIT**<br>County: **JEFFERSON Circuit** |

*Plantiff,* **STUCKER, ROY, ET AL VS. LOUISVILLE METRO GOVERNMENT, ET AL,** *Defendant*

TO:   **LOUISVILLE METRO GOVERNMENT**
      **C/O MAYOR GREG FISCHER**
      **527 W. JEFFERSON STREET, 4TH FLOOR**
      **LOUISVILLE, KY 402020000**

The Commonwealth of Kentucky to Defendant:

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*David L. Nicholson*

Jefferson Circuit Clerk
Date: **11/18/2020**

---

**Proof of Service**

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

    To: _____

☐ Not Served because: _____

Date: _____, 20_____        _____

                                                       Served By

                                                       Title



Page 1 of 1                                    **eFiled**

| | | |
|---|---|---|
| AOC-E-105    Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice    Courts.ky.gov<br><br>CR 4.02; Cr Official Form 1 | <br><br>**CIVIL SUMMONS** | Case #: **20-CI-004077**<br>Court:  **CIRCUIT**<br>County: **JEFFERSON Circuit** |

*Plantiff,* **STUCKER, ROY, ET AL VS. LOUISVILLE METRO GOVERNMENT, ET AL**, *Defendant*

TO:  **WESLEY TROUTMAN**
     **633 W. JEFFERSON STREET**
     **LOUISVILLE, KY 40202**

The Commonwealth of Kentucky to Defendant:

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

                    *David L. Nicholson*

                  Jefferson Circuit Clerk
                  Date: **11/18/2020**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

   To: _____

☐ Not Served because: _____

Date: _____, 20 _____

                          _____
                                  Served By

                          _____
                                    Title

Summons ID: @00000961541
CIRCUIT: 20-CI-004077 Certified Mail
STUCKER, ROY, ET AL VS. LOUISVILLE METRO GOVERNMENT, ET AL



*e*Filed

David L. Nicholson, Jefferson Circuit Clerk
600 West Jefferson Street
Louisville, KY 40202-4731

FILED IN CLERKS OFFICE
JEFFERSON CIRCUIT

2020 NOV 24 AM 9:59

LOUISVILLE METRO GOVERNMENT
7219 DIXIE HWY #106
LOUISVILLE, KY 40258



## KCOJ eFiling Cover Sheet

Case Number: 20-CI-004077

Envelope Number: 2596391

Package Retrieval Number: 259639118125821@00000951732

Service by: Certified Mail

Service Fee:  $ 0.00

Postage Fee: $ 12.50

The attached documents were generated via the Kentucky Court of Justice eFiling system. For more information on eFiling, go to http://courts.ky.gov/efiling.

| AOC-E-105    Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice    Courts.ky.gov<br><br>CR 4.02; Cr Official Form 1 | <br>**CIVIL SUMMONS** | Case #: **20-CI-004077**<br>Court: **CIRCUIT**<br>County: **JEFFERSON Circuit** |

*Plantiff,* **STUCKER, ROY, ET AL VS. LOUISVILLE METRO GOVERNMENT, ET AL,** *Defendant*

TO:  **LOUISVILLE METRO GOVERNMENT**

   **7219 DIXIE HWY #106**

   **LOUISVILLE, KY 40258**

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons.  **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*Davis L. Nicholson*

Jefferson Circuit Clerk
Date: **7/14/2020**

---

### Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____, 20_____     _____
                                                           Served By
                                     _____
                                                           Title

---

Summons ID: 259639118125821@00000951732
CIRCUIT: 20-CI-004077 Certified Mail
STUCKER, ROY, ET AL VS. LOUISVILLE METRO GOVERNMENT, ET AL



Page 1 of 1

*eFiled*

NO. _____

JEFFERSON CIRCUIT COURT
DIVISION _____
JUDGE _____

ROY STUCKER and COURTNEY BROWN-PORTER,                    PLAINTIFFS
on behalf of herself and as guardian and next friend of
her minor child, S.W.

v.

LOUISVILLE METRO GOVERNMENT,                              DEFENDANTS
UNKNOWN DETECTIVE, and UNKNOWN METRO POLICE OFFICERS

*** *** ***

## COMPLAINT AND JURY DEMAND

Plaintiffs, Roy Stucker ("Roy") and Courtney Brown-Porter ("Courtney"), on behalf of

herself and as guardian and next friend of her minor child, ("S.W.")(collectively "Plaintiffs") state

the following in support of their claims against Defendants, Louisville Metro Government

("Metro"), Unknown Detective ("Detective"), and Unknown Metro Police Officers ("Officers").

### PARTIES and JURISDICTION

1.      Plaintiffs are residents of Louisville, Kentucky.

2.      Metro is a legal governmental entity.

3.      The facts giving rise to this lawsuit occurred in Jefferson County, Kentucky, and

Defendants are otherwise subject to the personal jurisdiction of this Court.

4.      The amounts Plaintiffs seek in this lawsuit exceed the minimal jurisdictional

amount of this Court, and jurisdiction and venue in this Court are otherwise proper.

### FACTS

5.      On or about July 15, 2019, Plaintiffs were painting a residence located at 142 W.

Amherst Ave., Louisville, Kentucky (the "Residence").

6.     Roy is a painter and independent contractor. Roy lives with girlfriend Courtney and her child, S.W.

7.     Upon information and belief, Defendants were executing a search warrant at the Residence regarding potential drug activities of a Nathiel Boyington ("Boyington").

8.     However, the Residence was already searched on July 5, 2019, which resulted in Boyington being arrested on that date and placed in Metro's custody.

9.     Boyington remained in custody of Metro until after the raid on July 15, 2019.

10.    Any co-tenants of the Residence having any affiliation with Boyington moved out of the Residence approximately 5-10 days prior to the S.W.A.T. raid at issue on July 15, 2019.

11.    Roy was hired by the new tenant to paint the Residence to get it ready for the new tenant.

12.    Plaintiffs had no affiliation with or knowledge of Boyington or anyone living with him at the time of the raid.

13.    The house had been empty and removed of furniture for many days before July 15, 2019, including furniture being outside on the curb.

14.    Roy had been painting the house for three days prior to July 15, with his clearly marked painting truck in front of the Residence.

15.    On July 15, 2019, upon information and belief, Detective and a S.W.A.T. team of at least ten (10) Metro police officers raided the Residence in military fashion.

16.    The Officers broke into the house without reasonable advance warning or probable cause, including shooting objects through the windows.

17.    The Officers drew assault rifles on Plaintiffs, including S.W., while yelling commands.

18.   Plaintiffs initially thought they were being robbed.

19.   Plaintiffs were extremely frightened that they would be maimed or killed.

20.   The Officers handcuffed Plaintiffs for approximately 20 minutes, including handcuffing S.W., who was a 10 year old girl at the time.

21.   Plaintiffs did not pose any or enough danger to the Officers to warrant handcuffing them. Handcuffing Plaintiffs was unreasonable.

22.   S.W. did not pose any danger to the Officers.

23.   Handcuffing S.W. was unreasonable.

24.   Keeping Plaintiffs handcuffed was unreasonable.

25.   Keeping S.W. handcuffed was unreasonable.

26.   Plaintiffs have suffered past, present and future severe emotional distress as a result of the raid, including, but not limited to the descriptions above, and also one or more of the Plaintiffs: (a) having difficulty sleeping; (b) being afraid when they hear loud bangs or knocks on the door; (c) being afraid of the police; and (d) fearing being shot and/or death;

27.   Metro provided body camera footage of the raid but the footage was significantly redacted.

28.   Metro refused to provide the Search Warrant and Affidavit to Plaintiffs, despite repeated open records requests.

29.   Plaintiffs expressly reserve the right to amend this Complaint after discovery, including, but not limited to, once the Search Warrant Affidavit is produced and once unredacted copies of the body camera footage is provided, particularly given that the incident was very traumatic for Plaintiffs.

30.      Defendants' conduct was willful, in bad faith, malicious, and/or with reckless disregard for Plaintiffs' rights.

## COUNT I – DETECTIVE REGARDING THE SEARCH WARRANT

31.      Plaintiffs reassert all prior paragraphs as if fully set forth herein.

32.      The Detective should have known that: (1) the Residence was not occupied by Boyington; (2) the Residence was vacant of any resident; and (3) the Residence had already been searched ten days prior, which resulted in the target and any evidence he had being placed into custody.

33.      Even the most basic due diligence would have revealed that there was no probable cause to issue and/or execute the search warrant.

34.      Detective, in his official capacity and under color of law, made materially false statements and/or omissions to obtain the search warrant with either knowledge of its falsity or omission or with reckless disregard for the truth.

35.      Detective is not entitled to qualified immunity.

36.      Such conduct violated Plaintiffs' Fourth Amendment rights to be protected from unreasonable searches and seizures and to be free from warrants without probable cause.

37.      Such conduct violates 42 U.S.C. § 1983.

## COUNT II – DETECTIVE AND OFFICERS FOR ILLEGAL SEARCH AND SEIZURE

38.      Plaintiffs reassert all prior paragraphs as if fully set forth herein.

39.      The law requires that all entries, searches and seizures with a warrant must be executed in a reasonable manner.

40.      It was completely unreasonable to execute a warrant under the circumstances set forth above.

41.     Under the circumstances set forth above, it was completely unreasonable to: (a) use a S.W.A.T. team of at least 10 Officers, shooting through the windows, forced entry, and assault rifles.

42.     It was unreasonable to handcuff Plaintiffs and keep them handcuffed.

43.     It was unreasonable to handcuff S.W. and keep her handcuffed.

44.     The Officers who handcuffed Plaintiffs and/or kept them handcuffed are named as Defendants, and their actual names will be substituted for Unknown Officers after further discovery, including unredacted videos being produced.

45.     Detective and the Officers' conduct after entry was also unreasonable and excessive, as detailed above.

46.     Detective and the Officers' conduct in executing the warrant violated Plaintiffs' Fourth Amendment rights to be protected from unreasonable searches and seizures.

47.     Such conduct violates 42 U.S.C. § 1983.

### COUNT III – METRO'S CUSTOM

48.     Plaintiffs reassert all prior paragraphs as if fully set forth herein.

49.     Upon information and belief, Metro's policy or custom regarding obtaining and/or executing search warrants served to deprive Plaintiffs of their Fourth Amendment rights to be protected from unreasonable searches and seizures and to be free from warrants without probable cause.

50.     Upon information and belief, Metro fails to adequately train its officers regarding obtaining search warrants in order to protect citizens' Fourth Amendment rights to be protected from unreasonable searches and seizures and to be free from warrants without probable cause.

51.     Upon information and belief, Metro fails to adequately train its officers regarding executing search warrants in order to protect citizens' Fourth Amendment rights to be protected from unreasonable searches and seizures and to be free from warrants without probable cause.

52.     Metro's policy or custom results in the issuance of search warrants in lower income neighborhoods without probable cause and/or in an unreasonable manner in violation of the Fourth Amendment.

53.     Metro's policy or custom results in the issuance and/or execution of stale search warrants, even if probable cause existed when the warrant was obtained, which is unreasonable.

54.     There are numerous similar issuances and executions of search warrants in violation of law, including instances being litigated before this and the United States District Court for the Western District of Kentucky.

55.     Metro is deliberately indifferent to the known or obvious consequences of its policies and customs.

56.     Metro's conduct violates 42 U.S.C. § 1983.

### ADDITIONAL COUNTS – STATE LAW CLAIMS

57.     Plaintiffs reassert all prior paragraphs as if fully set forth herein.

58.     The following causes of action are asserted against Detective and the Officers, in their individual and official capacities.

59.     Detective and the Officers restrained, confined and held Plaintiffs against their will, depriving them of liberty without consent.

60.     Thus, they falsely imprisoned Plaintiffs.

61.     Detective and the Officers' conduct was deliberate, unreasonable, and/or with gross disregard for Plaintiffs' rights.

62.     Detective and the Officers' conduct exceeded all reasonable bounds of decency and was outrageous and intolerable in a civilized community.

63.     The conduct caused severe emotional distress to Plaintiffs.

64.     Thus, it amounts to the tort of outrage.

65.     Detective and the Officers' are liable for official misconduct, pursuant to KRS § 522.020 and KRS § 446.070, because they intended to obtain or confer a benefit or to injure Plaintiffs or to deprive Plaintiffs of a benefit, knowingly: (a) committing an act relating to his office which constitutes an unauthorized exercise of his official functions; or (b) refrains from performing a duty imposed upon him by law or clearly inherent in the nature of his office; or (c) violates any statute or lawfully adopted rule or regulation relating to his office.

66.     Defendants have violated Section 10 of the Bill of Rights of the Kentucky Constitution to be free from unreasonable search and seizure and to be free from warrants without probable cause, and without description as nearly as may be.

## DAMAGES

67.     As the result of each and every cause of action, Plaintiffs suffered damages, including emotional injuries, past, present, and future, in amounts to be determined by the jury, nominal damages, property damage, lost income, punitive damages, and their attorney fees, court costs, and interest.

**WHEREFORE**, Plaintiffs respectfully request this Court:

1. Grant trial by jury;

2. Enter Judgment against Defendants and in Plaintiffs' favor, including compensatory damages, punitive damages, court costs, interest at the legal rates, and attorney's fees; and

3. Grant any and all other relief the Court or jury deems appropriate.

Respectfully submitted:


/s/ Joshua T. Rose
Joshua T. Rose
ABELL ROSE LLC
108 S. Madison Ave.
Louisville, KY 40243
(502) 450-5611
jrose@abellroselaw.com

*Counsel for Plaintiffs*



CERTIFIED MAIL

7019 1640 0001 3701 4372

Wrong
Suite.

UTF

-R-T-S-    402582008-1N        11/19/20

RETURN TO SENDER
UNABLE TO FORWARD
UNABLE TO FORWARD
RETURN TO SENDER

Div. 1

0211/17/20

NIXIE    400    CC 1    RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD

BC: 40202473158    2047N32218*-00053



FILED IN CLERKS OFFICE
JEFFERSON CIRCUIT CT

2020 NOV 20  PM 3: 28

CLERK 18

MHC ___ D.C.

20-CI-407

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Louisville Metro Gov't
7/o Mayor Greg Fischer
527 W. Jefferson St 4th Fl

Louisville KY 40202

9590 9402 5730 0003 6363 64

2. Article Number *(Transfer from service label)*

7019 2970 0001 2772 9625

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____   ☐ Agent
                     ☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

NOV 1 8 2020

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

Commonwealth of Kentucky
Jefferson County
David Nicholson
Circuit Court Clerk

Receipt Number: 71-0111806-A
DATE: 11/12/2020
TIME: 08:38 AM

*** (Z) OTHER TYPE RECEIPT ***

CASE NO: 20-CI-004077
RECEIVED FROM: ROSE, JOSHUA
ACCOUNT OF: STUCKER, ROY, ET AL VS. LOUISVI
PARTY NAME:ROSE, JOSHUA

| | | |
|---|---|---|
| 1. | Postage MCFO(K(H)) | 12.50 |
| 2. | Copy-Photocopies CS(W(F)) | 1.00 |
| | TOTAL: | $13.50 |
| | CREDIT CARD: | $13.50 |
| | ***DIFF: | 0.00 |

*** Credit Card Invoice #: 116748999

2926657

Envelope #: 2926657
Prepared By: Web_Payment
** MCFO=Money Collected for Others
** CS=Charge for Services
Payer                                          Page 1 of 1

Commonwealth of Kentucky
Jefferson County
David Nicholson
Circuit Court Clerk

Receipt Number: 71-0111806-A
DATE: 11/12/2020
TIME: 08:38 AM

*** (Z) OTHER TYPE RECEIPT ***

CASE NO: 20-CI-004077
RECEIVED FROM: ROSE, JOSHUA
ACCOUNT OF: STUCKER, ROY, ET AL VS. LOUISVI
PARTY NAME:ROSE, JOSHUA

| | | |
|---|---|---|
| 1. | Postage MCFO(K(H)) | 12.50 |
| 2. | Copy-Photocopies CS(W(F)) | 1.00 |
| | TOTAL: | $13.50 |
| | CREDIT CARD: | $13.50 |
| | ***DIFF: | 0.00 |

*** Credit Card Invoice #: 116748999

2926657

Envelope #: 2926657
Prepared By: Web_Payment
** MCFO=Money Collected for Others
** CS=Charge for Services
Filing (KYCOURTS)                              Page 1 of 1

AOC-E-105   Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice   Courts.ky.gov

CR 4.02; Cr Official Form 1



**CIVIL SUMMONS**

Case #: **20-CI-004077**

Court: **CIRCUIT**

County: **JEFFERSON Circuit**

*Plantiff,* STUCKER, ROY, ET AL VS. LOUISVILLE METRO GOVERNMENT, ET AL, *Defendant*

TO: **LOUISVILLE METRO GOVERNMENT**
    **C/O MAYOR GREG FISCHER**
    **527 W. JEFFERSON STREET, 4TH FLOOR**
    **LOUISVILLE, KY 40202**

The Commonwealth of Kentucky to Defendant:
**LOUISVILLE METRO GOVERNMENT**

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*David L. Nicholson*

Jefferson Circuit Clerk
Date: **11/11/2020**

---

| **Proof of Service** | |
|---|---|
| This Summons was: | |
| ☐ Served by delivering a true copy and the Complaint (or other initiati | |
| To: _____ | |
| ☐ Not Served because: | |
| Date: _____, 20___ | |

U.S. Postal Service™
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®

Certified Mail Fee

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)
☐ Return Receipt (electronic)
☐ Certified Mail Restricted Delivery
☐ Adult Signature Required
☐ Adult Signature Restricted Delivery

Postage

Total Postage and Fees

Sent To

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

PS Form 3800, April 2015 PSN 7530-02-000-9047  See Reverse for Instructions

Summons ID: @00000960436
CIRCUIT: 20-CI-004077 Certified Mail
STUCKER, ROY, ET AL VS. LOUISVILLE METRO GOVERNMENT, ET AL

Page 1 of 1

LMPD #19-001 SW
Rev. 1-19
Page 1 of 3



Ky. Const. Sect. 10; RCr 13.10

**SEARCH WARRANT**

Case No.:

Court:    CIRCUIT

County:   JEFFERSON

Division:

## TO ALL PEACE OFFICERS IN THE COMMONWEALTH OF KENTUCKY:

Proof by affidavit having this day been made before me by:
  Wesley Troutman 7071

a peace officer of   Louisville Metro Police Department                    , that there is probable and reasonable
cause for the issuance of this Search Warrant as set out in the affidavit attached hereto and made a part hereof as if fully
set forth herein; **you are commanded to search** the premises known and numbered as:





FILED
JEFFERSON CIRCUIT COURT

OCT 09 2020

DAVID L. NICHOLSON, CLERK
BY    M.H.          D.C.

142 W. Amherst Ave, Louisville, KY 40214
And Surrounding Curtilage

### and more particularly described as follows:

142 W. Amherst Ave is a single family dwelling. The structure is situated on the south side of W. Amherst
Ave and faces North. The structure has an all red brick exterior with white trim. There is a security foor on the
front of the residence which opens out as well as a white front entry door ehich opens in. There is a small
covered porch on the front of the residence as well as multiple large windows. The dwelling has a light colored
grey roof.

### and/or in a vehicle or vehicles described as:

N/A

### and/or on the person or persons of:

Joshua KIRK

LMPD #19-001 SW
Rev. 1-19
Page 2 of 3

## the following described personal property, to wit:

- Methamphetamine and heroin, both of which are illegal controlled substances, pursuant to KRS218A, and, any other contraband or paraphernalia used to package, weigh, sell, distribute, cut or ingest controlled substances; and

- Firearms and ammunition including, but not limited to, handguns, pistols, revolvers, rifles, shotguns, and other weapons, and any records or receipts pertaining to firearms and ammunition utilized in furtherance and for the protection of illegal drug trafficking activity; and

- Books, records, receipts, notes ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances, in particular methamphetamine and heroin; and other Controlled Dangerous Substances; and

- United States currency, bank statements, and related records, safe deposit box keys, money wrappers, and any safe(s) within the dwelling; and

- Address and/or telephone books, safes, Rolodex indices and any papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers, and/or telex numbers of co-conspirators, and sources of supply; and

- Any electronic device capable of electronic communication or accessing social media accounts to include but not limited to cellular telephones, laptops and electronic tablets,

- Indicia of occupancy, residency, rental and/or ownership of the premise described herein including, but not limited to, utility and telephone bills, cancelled envelopes, rental, purchase or lease agreements, and keys.

LMPD #19-001 SW
Rev. 1-19
Page 3 of 3

If you find the above-described property, or any part thereof, **you will seize the property and deliver it forthwith** to me or

any other court in which the offense in respect to which the property or things taken is triable, **or retain it in your custody**

**subject to order of said court.**

Date
:                 7/15    , 2 019  .                          _____
                                                            Judge

                                                            _____ Court
                                                                               DIV S

Executed     15     day    July      , 2  019   ,   by
this                of                              Officer      W. Troutman

of the       LMPD                              ,   Badge No.   7071                    , by

searching said premises/vehicle/person(s) described herein and by seizing the following:



LMPD #19-002 ASW
Rev. 1-19
Page 1 of 10

Ky. Const. Section 10; RCr 2.02
RCr 13.10

**AFFIDAVIT FOR
SEARCH WARRANT**

Case No.:

Court:   CIRCUIT

County:   JEFFERSON

Division:

**Affiant,**   Wesley Troutman 7071 , a peace officer of   Louisville Metro Police Department ,
being first duly sworn, states he/she has, and there is reasonable and probable grounds to believe, and Affiant does
believe, there is now on the premises known and numbered as:



142 W. Amherst Ave, Louisville, KY 40214
And Surrounding Curtilage

### and more particularly described as follows:

142 W. Amherst Ave is a single family dwelling. The structure is situated on the south side of W. Amherst
Ave and faces North. The structure has an all red brick exterior with white trim. There is a security foor on the
front of the residence which opens out as well as a white front entry door ehich opens in. There is a small
covered porch on the front of the residence as well as multiple large windows. The dwelling has a light colored
grey roof.

### and/or in a vehicle or vehicles described as:

N/A

### and/or on the person or persons of:

Joshua KIRK

LMPD #19-002 ASW
Rev. 1-19
Page 2 of 10

### the following described personal property, to wit:

- Methamphetamine and marijuana, both of which are illegal controlled substances, pursuant to KRS218A, and, any other contraband or paraphernalia used to package, weigh, sell, distribute, cut or ingest controlled substances; and

- Firearms and ammunition including, but not limited to, handguns, pistols, revolvers, rifles, shotguns, and other weapons, and any records or receipts pertaining to firearms and ammunition utilized in furtherance and for the protection of illegal drug trafficking activity; and

- Books, records, receipts, notes ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances, in particular methamphetamine and marijuana; and other Controlled Dangerous Substances; and

- United States currency, bank statements, and related records, safe deposit box keys, money wrappers, and any safe(s) within the dwelling; and

- Address and/or telephone books, safes, Rolodex indices and any papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers, and/or telex numbers of co-conspirators, and sources of supply; and

- Any electronic device capable of electronic communication or accessing social media accounts to include but not limited to cellular telephones, laptops and electronic tablets,

- Indicia of occupancy, residency, rental and/or ownership of the premise described herein including, but not limited to, utility and telephone bills, cancelled envelopes, rental, purchase or lease agreements, and keys.

**Affiant believes and states there is probable and reasonable cause to believe said property constitutes:**
(check appropriate box or boxes):

☐  stolen or embezzled property;

☒  property or things used as means of committing a crime;

☒  property or things in possession of a person who intends to use it as a means of committing a crime;

☒  property or things in possession of a person to whom it was delivered for the purpose of concealing it or preventing its discovery and which is intended to be used as a means of committing a crime;

☒  property or things consisting of evidence which tends to show a crime has been committed or a particular person has committed a crime;

☐  Other _____

LMPD #19-002 ASW
Rev. 1-19
Page 3 of 10

**Affiant** has been an officer in the aforementioned agency for a period of ____6____ years and ____4____ months. The information and observations contained herein were received and made in his/her capacity as an officer thereof. On ____May 9th____, 2 __019__ , at approximately __1:00__  ☐ a.m. ☒ p.m., **Affiant** received information from/observed:

1. **NOTIFICATION:** On or about Thursday May 9, 2019, Detective Troutman received information from a Reliable Confidential Informant, hereinafter referred to as RCI #1, that a black male with the alias of "Jay" was trafficking heroin and methamphetamine in Jefferson County, Kentucky. RCI #1 stated that "Jay" utilizes a cellular phone designated by phone number ▇▇▇▇▇▇▇ to arrange transactions in which he sells narcotics. RCI #1 did not know "Jay's" actual name or any identifiers at this time.

2. **RCI #1 RELIABILITY:** RCI #1 has been established as a reliable confidential informant according to KRE 508, who is familiar with the way drugs are packaged, sold, and ingested due to his/ her past involvement in the illicit drug culture. RCI #1 is working in exchange for potential leniency on existing charges. RCI #1 has provided information on Louisville drug traffickers that officers have corroborated. RCI #l's information has been corroborated as truthful and accurate to this point and therefore, officers believe RCI #1 is reliable.

**Acting on the information received, Affiant conducted the following independent investigation:**

3. **.CONTROLLED BUY WK OF 5/15/2019:** During the week of May 15, 2019, Detective Troutman utilized RCI #1 to conduct a controlled buy of a quantity of suspected heroin from "Jay." Detective Troutman met with RCI # 1 at a pre-determined location and provided him with investigative currency from LMPD to conduct the buy. RCI #1 placed a phone call to "Jay" by dialing the previously mentioned telephone number, ▇▇▇▇▇▇ "Jay" answered the phone and arranged a transaction in which he instructed RCI #1 to meet him at ▇▇▇▇▇▇▇▇▇▇ and he agreed to sell RCI #1 a quantity of heroin. This call occurred in Detective Troutman's presence.

Detectives maintained surveillance of RCI #1 and followed him/ her to the location which "Jay" told him to meet him at. Detectives observed a black male medium build approach RCI #1's vehicle and sell RCI #1 a quantity of suspected heroin.

Detective Troutman met with RCI #1 at a predetermined location and retrieved a quantity of suspected heroin. RCI #1 confirmed that the individual that sold him the heroin was the individual whom he knows as "Jay."

4. **SURVEILLANCE 5/17/2019:** On May 17, 2019, Detectives Troutman, Mattiche, Kiper, Chaudoin, Barner and Sgt Neal established surveillance in the area of 9001 Honor Ave at approximately 1430 hours. At 1450 hours, Detective Kiper observed "Jay" exit the residence and enter the passenger seat a red Ford pickup truck. The truck travelled to the Dairy Queen located at 5608 Outer Loop, Louisville,

KY 40219. Sgt Neal observed "Jay" exit the truck and enter the business. After a short period of time, "Jay" exited and entered a white 2014 Ford Fusion bearing KY registration plate 234XBR.

Detectives followed "Jay" to the area of Belmont Rd/ Sumner Rd. Detective Troutman observed a white female approach the passenger side of "Jay's" vehicle. Detective Troutman observed Jay hand something to the female and depart the area. Detective Troutman knows from training and experience that this type of activity is consistent with a narcotics transaction. Detective Troutman observed the white female walk to the 3300 block of Bardstown Rd. Detective Troutman made contact with the female (Kristina LOHREY ████████████) and she immediately stated, "I swallowed it already." Detective Troutman understood this statement to mean that the individual had destroyed the narcotics which she had just purchased from "Jay." The female told Detective Troutman that she did not need medical attention. Ms. LOHREY was placed under arrest and transported to LMDC.

Detectives maintained surveillance of "Jay" and followed him in the same vehicle to the Kroger at 4211 S 3rd Street, Louisville, KY 40214. Detective Kiper observed "Jay" engage in what appeared to be a narcotics transaction and depart the area.

5. **INVESTIGATIVE STOP 5/17/2019:** Detectives maintained surveillance on "Jay" and followed him in the same vehicle back to the area of the Dairy Queen at 5608 Outer Loop. Detectives conducted an investigative traffic stop on the vehicle at 1600 hours. This stop was based off the previously observed activity in which "Jay" engaged.

During this stop, detectives identified "Jay" as Joshua D. KIRK (DOB ████████). Mr. KIRK's Kentucky Instruction Permit stated his address to be 9001 Honor Ave. Detectives searched the vehicle and found KIRK to be in possession with a large undetermined amount of U.S. Currency and multiple cell phones. Search indicated that KIRK was not in possession of narcotics at this time.

Detective Troutman elected not to charge KIRK with any crimes at this time in order to allow for the furtherance of the investigation IRT KIRK trafficking heroin and methamphetamine in Jefferson County.

6. **KIRK CRIMINAL HISTORY:** Detective Troutman conducted a CourtNet (LE Investigative Tool) Inquiry on Joshua D. KIRK and discovered the following Kentucky Criminal History:

a. *Jefferson County Circuit Court Case 18-F-020639-* TICS 1st Degree 2nd or > Offense (<10 D.U. Drug Unspec., Trafficking in Marijuana 2nd or > Offense Less than 8 oz. (Pending).

b. *Jefferson County Circuit Court Case 16-CR-001792-* TICS 1st Degree 1st Offense > or = 2 grams Fentanyl, POHBCF, Obs ID of a Machine, RSP U $10,000, CPFI 2nd Degree, POM, Giving Ofc False Name or Address. (Disposition: Guilty- 5 years Prison- Sentenced on 3/31/2017).

c. *Jefferson County District Court Case 16-CR-003297-* POHBCF. (Disposition: Guilty- 4 years Prison/ 4 years suspended/ supervised probation- Sentenced on 5/22/2015).

LMPD #19-002 ASW
Rev. 1-19
Page 5 of 10

   d. *Jefferson County Circuit Court Case 09-CR-003747*- Facl Assault 1st Degree, Facl Robbery 1st Degree. (Disposition: Guilty: 5 years prison- Sentenced on 7/9/2010).

7. **CONTROLLED BUY WK OF 5/21/2019:** During the week of 5/21/2019, Detective Troutman utilized as RCI #1, to conduct a controlled buy of a quantity of suspected heroin from Joshua D. KIRK. Detective Troutman met with RCI # 1 at a pre-determined location and provided him with investigative currency from LMPD to conduct the buy. RCI #1 contacted KIRK by calling telephone number (502) ██████. KIRK answered the phone and instructed RCI #1 to come to a location near Poplar Level Rd.

   Detectives maintained surveillance of RCI #1 and followed him/ her to the area of Poplar Level Rd. RCI #1 went to the location which KIRK had instructed him to and was provided a quantity of suspected heroin by KIRK and an unknown black male.

   Detective Troutman met with RCI #1 at a predetermined location and retrieved a quantity of suspected heroin.

8. **CONTROLLED BUY WK OF 5/29/2019:** During the week of 5/28/2019, Detective Troutman utilized RCI #1, to conduct a controlled buy of a quantity of suspected heroin and a quantity of suspected methamphetamine from Joshua D. KIRK. Detective Troutman met with RCI # 1 at a pre-determined location and provided him with investigative currency from LMPD to conduct the controlled purchase. RCI #1 contacted KIRK by calling telephone number (502) ██████ KIRK instructed RCI #1 to meet him near the 3900 Block of 7th Street Road.

   Detectives maintained surveillance of RCI #1 and followed him/ her to the area which KIRK had instructed him to go. Detectives observed KIRK at the location in a silver 2005 Chevrolet Trailblazer bearing KY registration plate 967-YSC. KIRK exited the vehicle and approached RCI #1's vehicle and provided him/ her with a quantity of suspected heroin and a quantity of suspected methamphetamine and then returned to the previously mentioned 2005 Chevrolet Trailblazer and departed.

   Detective Troutman met with RCI #1 at a predetermined location and retrieved a quantity of suspected heroin. RCI #1 informed Detective Troutman that this was the same vehicle which KIRK was operating during the previously mentioned controlled buy during the week of 5/21/19.

9. **SURVEILLANCE 5/31/2019:** During the morning hours of 5/31/2019, Detective Troutman reviewed electronic surveillance records which indicated that KIRK was in the area of the 9000 block of Red Deer Circle, Louisville, KY 40220. Detective Troutman travelled to the area and located the previously mentioned silver 2005 Chevrolet Trailblazer (KY 967-YSC) parked outside of 9001 Red Deer Circle (apartment building with multiple units).

10. **CONTROLLED BUY WK OF 6/7/2019:** During the week of 6/7/2019, Detective Troutman utilized RCI #1, to conduct a controlled buy of a quantity of suspected heroin and a quantity of suspected methamphetamine from Joshua D. KIRK. Detective Troutman met with RCI # 1 at a pre-determined location and provided him with investigative currency from LMPD to conduct the controlled purchase. RCI #1 contacted KIRK by calling telephone number (502) ██████ Through a series of phone calls

between KIRK and RCI #1, KIRK arranged the transaction in which he sold a quantity of suspected methamphetamine and a quantity of suspected heroin to RCI #1.

Prior to the above described call, Detectives began conducting surveillance on KIRK. KIRK departed 9001 Honor Ave in a silver Chevrolet Trailblazer (KY 967-YSC) and travelled to 142 W. Amherst Ave, Louisville, KY 40214. A short time later, Detective Kiper observed KIRK exit 142 W. Amherst Ave and enter the passenger seat of a gold Kia sedan bearing KY registration plate 241-YTY. The vehicle then departed the area. A short time passed, and the gold Kia sedan (KY 241-YTY) was observed arriving back at 142 W. Amherst Ave. KIRK exited the passenger side of the Kia and entered the driver seat of the previously mentioned Chevrolet Trailblazer (KY 967-YSC).

KIRK again contacted RCI #1 a short time after he was observed leaving 142 W. Amherst Ave and provided a more detailed location at which he wanted to meet him to conduct the transaction. Detectives followed RCI #1 and KIRK to the location at which KIRK provided RCI #1 with a quantity of suspected methamphetamine and a quantity of suspected heroin and both departed the area.

Detective Troutman met with RCI #1 at a predetermined location and retrieved a quantity of suspected heroin and suspected methamphetamine.

11. **CONTROLLED BUY WK OF 6/25/2019:** During the week of 6/25/2019 (within 48 hours of Search Warrant Application on 6/26/2019), Detective Troutman utilized RCI #1, to conduct a controlled buy of a quantity of suspected methamphetamine from Joshua D. KIRK. Detective Troutman went with RCI # 1 at a pre-determined location and provided him/ her with investigative currency from LMPD to conduct the controlled purchase. RCI #1 contacted KIRK by calling telephone number (502) ▮▮▮▮▮ Through a series of phone calls between KIRK and RCI #1, KIRK arranged a transaction in which he sold a quantity of suspected methamphetamine to RCI #1. While arranging the narcotics transaction, KIRK contacted RCI #1 from two phone numbers which were (502) ▮▮▮▮▮ and (502) ▮▮▮▮▮

During the above controlled calls, surveillance records indicated that KIRK was located at 9001 Honor Ave. Detective Troutman traveled to 9001 Honor Avenue and observed a white 2013 Buick 4 door sedan (KY 496-ZGM) parked in the driveway. A short time after the above described calls were made, KIRK was observed exiting 9001 Honor Ave and entering the driver's seat of the white Buick sedan. KIRK traveled from 9001 Honor Ave to 142 W. Amherst Drive where he was observed exiting the vehicle and walking toward the residence. After a short period of time KIRK walked away from the residence and returned to the white Buick sedan and traveled to the location at which he had instructed RCI #1 to meet him. KIRK met with RCI #1 at the location and sold him a quantity of suspected methamphetamine.

Detective Troutman met with RCI #1 at a predetermined location and retrieved a quantity of suspected methamphetamine. RCI #1 stated he observed that KIRK was in possession of a black semi-auto handgun and a large amount of U.S. Currency at the time of the transaction.

12. **KIRK TRAVEL TO MT. GILEAD, OHIO 7/7/2019:** On 7/7/2019, electronic surveillance records related to phone number (502) ▮▮▮▮▮ indicated that KIRK traveled from an unknown apartment unit in the area of 9001 Red Deer Circle to 9001 Honor Ave at approximately 1430 hours. Electronic surveillance records indicate that at approximately 1510 hours KIRK departed 9001 Honor Avenue and

travelled to the area of Mt. Gilead, Ohio. Electronic surveillance records indicate that KIRK remained in the area of Mt. Gilead, Ohio for approximately 1 hour and then returned to Louisville and travelled to an unknown location near the 4600 Block of Shasta Trail.

Electronic surveillance records indicate that KIRK did not utilize the previously mentioned white Buick sedan (KY 444-ZFB) or the previously mentioned Chevrolet Trailblazer (KY 967-YSC) during this trip. This led Detective Troutman to believe that KIRK was now operating a different vehicle.

Detective Troutman knows from training and experience that drug traffickers will often engage in interstate travel to conduct large-scale narcotics transactions. The above described interstate travel in which KIRK travelled to the area of Mt. Gilead, Ohio where he remained for a short period of time before returning to Louisville is consistent with travel that is indicative of a large-scale narcotics transaction.

13. **ID OF NISSAN ALTIMA OPERATED BY KIRK 7/10/2019:** On 7/10/2019 at approximately 1000 hours, electronic surveillance records for telephone number (502) 802-0923 indicated KIRK was in the area of 9001 Red Deer Circle. Detective Troutman travelled to the area and observed a black 2018 Nissan Altima bearing KY registration plate 001-YZP parked near 9001 Red Deer Cir. Detective Troutman walked around the vehicle and observed a quantity of marijuana in the center console area of the vehicle. Detective continued surveillance for some time but did not observe KIRK at this time.

On 7/11/2019 at approximately 0430 hours, electronic surveillance records indicated that KIRK had just arrived in the area of 9001 Red Deer Circle. Detective Troutman travelled to the area and observed KIRK exiting the previously mentioned black 2018 Nissan Altima (KY 001-YZP). KIRK walked away from the vehicle and entered an unknown apartment building/ unit.

14. **9001 RED DEER CIRCLE APT 206:** On 7/11/2019, Detective Troutman made contact with an employee of The Meadows Apartments regarding Joshua KIRK. This is the location of 9001 Red Deer Circle, the apartment building where KIRK has stayed overnight on multiple occasions during the course of this investigation. The employee advised that he/she has observed KIRK coming and going from 9001 Red Deer Circle Apt 206.

15. **SURVEILLANCE 7/14/2019:** On 7/14/2019 at approximately 2030 hours, Detective Troutman and Detective Mattiche established surveillance on the previously mentioned black 2018 Nissan Altima (KY 001-YZP) near the intersection of Shepherdsville Rd and Fern Valley Rd. Detectives followed the vehicle to the area of Jefferson Mall located at 4801 Outer Loop. The vehicle parked and detectives observed Joshua KIRK and Jacori MOORE (DOB ██████) exit the vehicle. KIRK was the driver. MOORE is a known drug trafficker to detectives who recently fled from the Jeffersontown Police Department during a narcotics investigation.

KIRK and MOORE entered the mall and exited a short time later and returned to the black Nissan Altima (KY 001-YZP). Detectives Troutman, Mattiche and Kiper followed the vehicle to the area of Carol Rd and Hikes Ln. After a short period of time, the vehicle was observed pulling back onto Hikes Ln from Carol Rd. Detectives followed the vehicle to the intersection of Hathaway Ave and Peachtree Ave and observed it pull up next to another vehicle for a short period of time before departing the area. Detectives attempted to maintain physical surveillance on KIRK but were unsuccessful at this time.

**16. CONTROLLED BUY WK OF 7/14/2019:** Within the past 48 hours, Detective Troutman utilized RCI # 1 to conduct a controlled buy of a quantity of suspected methamphetamine from KIRK. Prior to the controlled buy, Detective Kiper established surveillance at 9001 Red Deer Circle Apt 206. At this time, the previously mentioned 2018 black Nissan Altima (KY 001-YZP) was parked in front of 9001 Red Deer Circle Apt 206.

Detective Troutman met with RCI # 1 at a pre-determined location and provided him/ her with investigative currency from LMPD to conduct the controlled purchase. RCI #1 contacted KIRK by calling telephone number (502) ▮▮▮▮▮ Through a series of phone calls between KIRK and RCI #1, in which KIRK utilized both telephone number (502) ▮▮▮▮▮ KIRK arranged a transaction in which he sold a quantity of suspected methamphetamine to RCI #1.

KIRK was observed leaving 9001 Red Deer Circle Apt 206 and entering the previously mentioned black 2018 Nissan Altima (KY 001-YZP). KIRK arrived at the location of the controlled buy some time later and provided RCI # 1 with a quantity of suspected methamphetamine.

**SUMMARY:** Based on the following summary of the above investigation,

- RCI # 1 statements that a black male whom he knows as "Jay" (later identified by detectives as Joshua D. KIRK) sells heroin and methamphetamine in the Louisville Metro Area, and

- RCI # 1 statement that KIRK utilizes telephone number (502) ▮▮▮▮▮ to arrange drug transactions, and

- Observation of KIRK engaging in the above described apparent drug transactions on 5/17/2019, and

- The above described controlled buys in which RCI #1 made contact with KIRK at (502) ▮▮▮▮▮ and KIRK arranged transactions in which suspected heroin was sold to RCI #1, and

- KIRK's Kentucky Criminal History which includes multiple felony convictions for violent and drug trafficking related felonious offenses, and

- A controlled buy during the week of 5/29/2019 in which RCI #1 contacted KIRK at (502) ▮▮▮▮▮ and KIRK arranged a transaction in which he arrived in the previously mentioned 2005 Chevrolet Trailblazer (KY 967-YSC) and sold suspected heroin and suspected methamphetamine to RCI #1, and

- Surveillance which confirms that KIRK utilizes the previously mentioned silver 2005 Chevrolet Trailblazer (KY 967-YSC) as a primary means of transportation as well as a means of transportation to and from drug transactions and as a means of transporting suspected narcotics and currency which is the proceeds thereof, and

- The previously mentioned surveillance attempts in which detectives not been able to maintain surveillance on KIRK as well as the previously mentioned investigative stop in which KIRK was able

to see multiple LMPD narcotics detective's vehicles and become privy multiple investigative tactics of narcotics investigators, and

- A controlled buy during the week of 6/7/2019 in which RCI #1 contacted KIRK at (502) ███ and KIRK arranged a transaction in which he arrived in the previously mentioned 2005 Chevrolet Trailblazer (KY 967-YSC) and sold suspected heroin and suspected methamphetamine to RCI #1, and

- A controlled buy during the week of 6/25/2019 in which RCI #1 contacted KIRK at (502) ███ and KIRK subsequently contacted RCI #1 from phone numbers (502) ███ nd (502) ███ and arranged a transaction in which he arrived in the previously mentioned white 2013 Buick sedan (KY 496-ZGM) and sold suspected methamphetamine to RCI #1, and

- Detective Troutman's knowledge from training and experience that drug traffickers commonly use multiple vehicles to avoid law enforcement detection, and

- The above described interstate travel in which KIRK travelled to Mt. Gilead, Ohio where he remained for a short period of time before returning to Louisville, and

- Observation of KIRK occupying and operating the above described black 2018 Nissan Altima (KY 001-YZP) in the area of 9001 Red Deer Circle on 7/11/2019 and previous surveillance in which Detective Troutman observed marijuana inside the same vehicle on 7/10/2019, and

- A controlled buy of suspected methamphetamine made within the last 48 hours in which KIRK was observed leaving 9001 Red Deer Circle Apt 206 and arriving some time later at the location of the controlled buy in the previously mentioned black 2018 Nissan Altima (KY 001-YZP), and

- This detective's knowledge that drug traffickers commonly use multiple locations to store narcotics, firearms and currency, and

- Observation of KIRK travelling to and from 9001 Honor Avenue, 142 W. Amherst Dr and 9001 Red Deer Circle Apt 206 shortly before multiple controlled buys and activity indicative of narcotics trafficking described above,

Detective Troutman believes the execution of this search warrant at 142 W. Amherst and its surrounding curtilage will result in the seizure of illegal controlled substances to include methamphetamine and heroin, firearms used for the furtherance of drug trafficking, U.S. Currency which is the proceed of drug trafficking as well as additional evidence implicating Joshua D. KIRK in the trafficking of methamphetamine and heroin in violation of both the Kentucky Revised Statutes and Federal Statutes.

LMPD #19-002 ASW
Rev. 1-19
Page 10 of 10

*A reliable confidential informant pursuant to Kentucky Rules of Evidence 508 has provided information during this investigation that was corroborated through independent investigation. The reliable confidential informant has past involvement with the illegal drug culture, and is familiar with how narcotics are sold, packaged and stored. The reliable confidential informant wishes to remain anonymous for his/ her safety as well as the safety of his/ her family.*

Affiant requests permission to execute this search warrant at any time during the day or night.

**Affiant** has reasonable and probable cause to believe, and believes, grounds exist for issuance of a Search Warrant based on the aforementioned facts, information and circumstances and **prays a Search Warrant be issued**, that the property (or any part thereof) be seized and brought before any Court and/or retained subject to order of said Court.

_____
**Officer**

| Subscribed and sworn to before me ☑in my presence ☐ via oral communication on this the _15th_ day of |
| _____ July _____, 2019, at 4:01 ☐ a.m. ☑ p.m. |
| Judge _____ |

RECEIPT NO. 19-2154

COMMONWEALTH OF KENTUCKY

JEFFERSON
DISTRICT / CIRCUIT COURT

# ORDER

IT IS HEREBY ORDERED:

Pursuant to KRS 61.878(1)(h), the search warrant and supporting affidavit authorizing the search of

_____ **142 W. Amherst** _____

in Jefferson County, Kentucky shall be sealed and shall remain sealed pending further order of the court.

JUDGE
JEFFERSON DISTRICT / CIRCUIT COURT

DATE: _____ 7/15/19 _____

NO. 20-CI-004077                                    JEFFERSON CIRCUIT COURT
                                                         DIVISION ONE (1)
                                                       JUDGE BARRY WILLETT

ROY STUCKER, et al.                                              PLAINTIFFS

v.                          **MOTION TO UNSEAL**
                            *FILED ELECTRONICALLY*

LOUISVILLE METRO GOVERNMENT, et al.                             DEFENDANTS

                           * * * * * *

                            ***NOTICE***

     Take notice that on the 14th day of September, 2020, at the hour of 8:45 a.m., via call-in

number 1-774-220-4000; Conference ID 595-4054, the undersigned will make the following

Motion in the courtroom of the above-styled case.

                            **MOTION**

     Plaintiffs move to unseal the search warrant and affidavit regarding the search at 142

Amherst Ave., Louisville on July 15, 2019, which is the subject matter of this lawsuit. There is no

basis for it to remain sealed.

                                        Respectfully submitted:


                                        /s/ Joshua T. Rose
                                        Joshua T. Rose
                                        ABELL ROSE LLC
                                        108 S. Madison Ave.
                                        Louisville, KY 40243
                                        (502) 450-5611
                                        jrose@abellroselaw.com
                                        *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via regular mail, the Court's ECF system, and/or electronic mail on this 8th day of September, 2020, to the following person(s):

Louisville Metro Government
7219 Dixie Hwy #106
Louisville, KY 40258

/s/ Joshua T. Rose
Joshua T. Rose

MOT : 000002 of 000002

NO. 20-CI-004077

JEFFERSON CIRCUIT COURT
DIVISION ONE (1)
JUDGE BARRY WILLETT

ROY STUCKER, et al.

PLAINTIFFS

v.

**ORDER**
*FILED ELECTRONICALLY*

LOUISVILLE METRO GOVERNMENT, et al.

DEFENDANTS

\* \* \* \* \* \*

Upon motion of Plaintiffs and the Court being otherwise sufficiently advised, the search

warrant and affidavit regarding the search at 142 Amherst Ave., Louisville on July 15, 2019 shall

be unsealed and made available to Plaintiffs' counsel and the public.

JUDGE

DATE    9/14/20

ENTERED IN COURT
DAVID L. NICHOLSON, CLERK

SEP 1 4 2020

BY _____ DEPUTY CLERK

TENDERED BY:

/s/ Joshua T. Rose
Joshua T. Rose
Abell Rose LLC
108 S. Madison Avenue
Louisville, KY 40243
(502) 450-5611
jrose@abellroselaw.com

TD : 000001 of 000001




| AQC-E-105     Sum Code: CI | | Case #: **20-CI-004077** |
|---|---|---|
| Rev. 9-14 | | Court:  **CIRCUIT** |
| Commonwealth of Kentucky | | County: **JEFFERSON Circuit** |
| Court of Justice    Courts.ky.gov | | |
| CR 4.02; Cr Official Form 1 | **CIVIL SUMMONS** | |

*Plaintiff,* STUCKER, ROY, ET AL VS. LOUISVILLE METRO GOVERNMENT, ET AL, *Defendant*

TO:  **UNKNOWN METRO POLICE OFFICERS**
 **633 W. JEFFERSON STREET**
 **LOUISVILLE, KY 40202**

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons.  **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*David L. Nicholson*

Jefferson Circuit Clerk
Date: 7/14/2020

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____, 20_____       _____
                                                                            Served By

                                                                            _____
                                                                            Title

Summons ID: 259639118125823@00000951734
CIRCUIT: 20-CI-004077 Certified Mail
STUCKER, ROY, ET AL VS. LOUISVILLE METRO GOVERNMENT, ET AL



Page 1 of 1



| AOC-E-105        Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice      Courts.ky.gov<br><br>CR 4.02; Cr Official Form 1 | <br>**CIVIL SUMMONS** | Case #: **20-CI-004077**<br>Court: **CIRCUIT**<br>County: **JEFFERSON Circuit** |

*Plantiff,* **STUCKER, ROY, ET AL VS. LOUISVILLE METRO GOVERNMENT, ET AL,** *Defendant*



TO:  **UNKNOWN DETECTIVE LMPD**

    **633 W. JEFFERSON STREET**

    **LOUISVILLE, KY 40202**

The Commonwealth of Kentucky to Defendant:

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*David L. Nicholson*

Jefferson Circuit Clerk
Date: **7/14/2020**

---

**Proof of Service**

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

    To: _____

☐ Not Served because: _____

    Date: _____, 20 _____        _____

                                                         Served By

                                                            _____

                                                            Title



*e*Filed

FILED IN CLERKS OFF
JEFFERSON CIRCUIT CT

2020 JUL 22  AM 10: 40

CLERK 21

D.C.

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. 20CI 4077 <br> ■ Print your name and address on the reverse so that we can return the card to you.  SC <br> ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature <br> X □ Agent □ Addressee <br> B. Received by (Printed Name) C. Date of Delivery  7-17-20 |
| 1. Article Addressed to: <br><br> Louisville, Metro Gov <br> 7219 Dixie Hwy #106 <br><br> Louisville, Ky. 40258 | D. Is delivery address different from item 1? □ Yes <br> If YES, enter delivery address below: □ No |
| 9590 9402 5730 0003 6244 60 | 3. Service Type <br> □ Adult Signature <br> □ Adult Signature Restricted Delivery <br> □ Certified Mail® <br> □ Certified Mail Restricted Delivery <br> □ Collect on Delivery <br> □ Collect on Delivery Restricted Delivery <br> ☐ ...stricted Delivery | □ Priority Mail Express® <br> □ Registered Mail™ <br> □ Registered Mail Restricted Delivery <br> □ Return Receipt for Merchandise <br> □ Signature Confirmation™ <br> □ Signature Confirmation Restricted Delivery |
| 2. Article Number (Transfer from service label) <br> 7019 1640 0001 3701 4372 | |

PS Form 3811, July 2015 PSN 7530-02-000-9053                    Domestic Return Receipt

NO. 20 CI 04077

JEFFERSON CIRCUIT COURT
DIVISION (1)

JUDGE _____

ROY STUCKER and COURTNEY BROWN-PORTER,          PLAINTIFFS
on behalf of herself and as guardian and next friend of
her minor child, S.W.

v.

LOUISVILLE METRO GOVERNMENT,          DEFENDANTS
UNKNOWN DETECTIVE, and UNKNOWN METRO POLICE OFFICERS

\*\*\* \*\*\* \*\*\*

## COMPLAINT AND JURY DEMAND

Plaintiffs, Roy Stucker ("Roy") and Courtney Brown-Porter ("Courtney"), on behalf of herself and as guardian and next friend of her minor child, ("S.W.")(collectively "Plaintiffs") state the following in support of their claims against Defendants, Louisville Metro Government ("Metro"), Unknown Detective ("Detective"), and Unknown Metro Police Officers ("Officers").

### PARTIES and JURISDICTION

1.     Plaintiffs are residents of Louisville, Kentucky.

**JURY FEE PAID**

2.     Metro is a legal governmental entity.

3.     The facts giving rise to this lawsuit occurred in Jefferson County, Kentucky, and Defendants are otherwise subject to the personal jurisdiction of this Court.

4.     The amounts Plaintiffs seek in this lawsuit exceed the minimal jurisdictional amount of this Court, and jurisdiction and venue in this Court are otherwise proper.

### FACTS

5.     On or about July 15, 2019, Plaintiffs were painting a residence located at 142 W. Amherst Ave., Louisville, Kentucky (the "Residence").

6.     Roy is a painter and independent contractor. Roy lives with girlfriend Courtney and her child, S.W.

7.     Upon information and belief, Defendants were executing a search warrant at the Residence regarding potential drug activities of a Nathiel Boyington ("Boyington").

8.     However, the Residence was already searched on July 5, 2019, which resulted in Boyington being arrested on that date and placed in Metro's custody.

9.     Boyington remained in custody of Metro until after the raid on July 15, 2019.

10.    Any co-tenants of the Residence having any affiliation with Boyington moved out of the Residence approximately 5-10 days prior to the S.W.A.T. raid at issue on July 15, 2019.

11.    Roy was hired by the new tenant to paint the Residence to get it ready for the new tenant.

12.    Plaintiffs had no affiliation with or knowledge of Boyington or anyone living with him at the time of the raid.

13.    The house had been empty and removed of furniture for many days before July 15, 2019, including furniture being outside on the curb.

14.    Roy had been painting the house for three days prior to July 15, with his clearly marked painting truck in front of the Residence.

15.    On July 15, 2019, upon information and belief, Detective and a S.W.A.T. team of at least ten (10) Metro police officers raided the Residence in military fashion.

16.    The Officers broke into the house without reasonable advance warning or probable cause, including shooting objects through the windows.

17.    The Officers drew assault rifles on Plaintiffs, including S.W., while yelling commands.

Presiding Judge: HON. BARRY WILLETT (630175)

CCP : 000002 of 000008

Filed        20-CI-0040;      07/14/2020          David L. Nicholson   Jefferson Circuit Clerk

18.    Plaintiffs initially thought they were being robbed.

19.    Plaintiffs were extremely frightened that they would be maimed or killed.

20.    The Officers handcuffed Plaintiffs for approximately 20 minutes, including handcuffing S.W., who was a 10 year old girl at the time.

21.    Plaintiffs did not pose any or enough danger to the Officers to warrant handcuffing them. Handcuffing Plaintiffs was unreasonable.

22.    S.W. did not pose any danger to the Officers.

23.    Handcuffing S.W. was unreasonable.

24.    Keeping Plaintiffs handcuffed was unreasonable.

25.    Keeping S.W. handcuffed was unreasonable.

26.    Plaintiffs have suffered past, present and future severe emotional distress as a result of the raid, including, but not limited to the descriptions above, and also one or more of the Plaintiffs: (a) having difficulty sleeping; (b) being afraid when they hear loud bangs or knocks on the door; (c) being afraid of the police; and (d) fearing being shot and/or death;

27.    Metro provided body camera footage of the raid but the footage was significantly redacted.

28.    Metro refused to provide the Search Warrant and Affidavit to Plaintiffs, despite repeated open records requests.

29.    Plaintiffs expressly reserve the right to amend this Complaint after discovery, including, but not limited to, once the Search Warrant Affidavit is produced and once unredacted copies of the body camera footage is provided, particularly given that the incident was very traumatic for Plaintiffs.

Presiding Judge: HON. BARRY WILLETT (630175)

COM: 000003 of 000008

30.    Defendants' conduct was willful, in bad faith, malicious, and/or with reckless disregard for Plaintiffs' rights.

## COUNT I – DETECTIVE REGARDING THE SEARCH WARRANT

31.    Plaintiffs reassert all prior paragraphs as if fully set forth herein.

32.    The Detective should have known that: (1) the Residence was not occupied by Boyington; (2) the Residence was vacant of any resident; and (3) the Residence had already been searched ten days prior, which resulted in the target and any evidence he had being placed into custody.

33.    Even the most basic due diligence would have revealed that there was no probable cause to issue and/or execute the search warrant.

34.    Detective, in his official capacity and under color of law, made materially false statements and/or omissions to obtain the search warrant with either knowledge of its falsity or omission or with reckless disregard for the truth.

35.    Detective is not entitled to qualified immunity.

36.    Such conduct violated Plaintiffs' Fourth Amendment rights to be protected from unreasonable searches and seizures and to be free from warrants without probable cause.

37.    Such conduct violates 42 U.S.C. § 1983.

## COUNT II – DETECTIVE AND OFFICERS FOR ILLEGAL SEARCH AND SEIZURE

38.    Plaintiffs reassert all prior paragraphs as if fully set forth herein.

39.    The law requires that all entries, searches and seizures with a warrant must be executed in a reasonable manner.

40.    It was completely unreasonable to execute a warrant under the circumstances set forth above.

Presiding Judge: HON. BARRY WILLETT (630175)

CCM  000004 of 000008

41.   Under the circumstances set forth above, it was completely unreasonable to: (a) use a S.W.A.T. team of at least 10 Officers, shooting through the windows, forced entry, and assault rifles.

42.   It was unreasonable to handcuff Plaintiffs and keep them handcuffed.

43.   It was unreasonable to handcuff S.W. and keep her handcuffed.

44.   The Officers who handcuffed Plaintiffs and/or kept them handcuffed are named as Defendants, and their actual names will be substituted for Unknown Officers after further discovery, including unredacted videos being produced.

45.   Detective and the Officers' conduct after entry was also unreasonable and excessive, as detailed above.

46.   Detective and the Officers' conduct in executing the warrant violated Plaintiffs' Fourth Amendment rights to be protected from unreasonable searches and seizures.

47.   Such conduct violates 42 U.S.C. § 1983.

### COUNT III – METRO'S CUSTOM

48.   Plaintiffs reassert all prior paragraphs as if fully set forth herein.

49.   Upon information and belief, Metro's policy or custom regarding obtaining and/or executing search warrants served to deprive Plaintiffs of their Fourth Amendment rights to be protected from unreasonable searches and seizures and to be free from warrants without probable cause.

50.   Upon information and belief, Metro fails to adequately train its officers regarding obtaining search warrants in order to protect citizens' Fourth Amendment rights to be protected from unreasonable searches and seizures and to be free from warrants without probable cause.

Presiding Judge: HON. BARRY WILLETT (630175)

CCM   000005 of 000008

51.    Upon information and belief, Metro fails to adequately train its officers regarding executing search warrants in order to protect citizens' Fourth Amendment rights to be protected from unreasonable searches and seizures and to be free from warrants without probable cause.

52.    Metro's policy or custom results in the issuance of search warrants in lower income neighborhoods without probable cause and/or in an unreasonable manner in violation of the Fourth Amendment.

53.    Metro's policy or custom results in the issuance and/or execution of stale search warrants, even if probable cause existed when the warrant was obtained, which is unreasonable.

54.    There are numerous similar issuances and executions of search warrants in violation of law, including instances being litigated before this and the United States District Court for the Western District of Kentucky.

55.    Metro is deliberately indifferent to the known or obvious consequences of its policies and customs.

56.    Metro's conduct violates 42 U.S.C. § 1983.

**ADDITIONAL COUNTS – STATE LAW CLAIMS**

57.    Plaintiffs reassert all prior paragraphs as if fully set forth herein.

58.    The following causes of action are asserted against Detective and the Officers, in their individual and official capacities.

59.    Detective and the Officers restrained, confined and held Plaintiffs against their will, depriving them of liberty without consent.

60.    Thus, they falsely imprisoned Plaintiffs.

61.    Detective and the Officers' conduct was deliberate, unreasonable, and/or with gross disregard for Plaintiffs' rights.

62.    Detective and the Officers' conduct exceeded all reasonable bounds of decency and was outrageous and intolerable in a civilized community.

63.    The conduct caused severe emotional distress to Plaintiffs.

64.    Thus, it amounts to the tort of outrage.

65.    Detective and the Officers' are liable for official misconduct, pursuant to KRS § 522.020 and KRS § 446.070, because they intended to obtain or confer a benefit or to injure Plaintiffs or to deprive Plaintiffs of a benefit, knowingly: (a) committing an act relating to his office which constitutes an unauthorized exercise of his official functions; or (b) refrains from performing a duty imposed upon him by law or clearly inherent in the nature of his office; or (c) violates any statute or lawfully adopted rule or regulation relating to his office.

66.    Defendants have violated Section 10 of the Bill of Rights of the Kentucky Constitution to be free from unreasonable search and seizure and to be free from warrants without probable cause, and without description as nearly as may be.

## DAMAGES

67.    As the result of each and every cause of action, Plaintiffs suffered damages, including emotional injuries, past, present, and future, in amounts to be determined by the jury, nominal damages, property damage, lost income, punitive damages, and their attorney fees, court costs, and interest.

**WHEREFORE**, Plaintiffs respectfully request this Court:

1. Grant trial by jury;

2. Enter Judgment against Defendants and in Plaintiffs' favor, including compensatory damages, punitive damages, court costs, interest at the legal rates, and attorney's fees; and

3. Grant any and all other relief the Court or jury deems appropriate.

Presiding Judge: HON. BARRY WILLETT (630175)

CCM: 000007 of 000008

Respectfully submitted:


/s/ Joshua T. Rose
Joshua T. Rose
ABELL ROSE LLC
108 S. Madison Ave.
Louisville, KY 40243
(502) 450-5611
jrose@abellroselaw.com

*Counsel for Plaintiffs*

Presiding Judge: HON. BARRY WILLETT (630175)

CCM: 000008 of 000008